IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 04-cv-01992-MSK-CBS

BTU EMPIRE CORPORATION,

    Plaintiff,

v.

RAY BARKER and
BRAD BARKER,

    Defendants.

_____

**OPINION AND ORDER GRANTING MOTION TO REMAND**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Objections **(# 45, 46, 47)** to the April 4, 2005 Report and Recommendation **(# 43)** of United States Magistrate Judge Craig B. Shaffer that the Plaintiff's Motion to Remand **(# 10)** be denied as moot, that proposed Intervenor Glen Stinson's Motion to Intervene **(# 24)** be denied as moot, and that the Plaintiff's Motion to Amend the Complaint **(# 12)** be granted and the case be remanded to state court; the Plaintiff's response **(# 53)** to those Objections; and the Defendants' reply **(# 55)**.

**BACKGROUND**

The Plaintiff, a Delaware corporation with its principal place of business in Colorado, commenced this action in Colorado District Court for Moffat County, seeking a declaratory

1

judgment that it was entitled to enter onto land owned by the Defendants and begin certain required acts of mining reclamation. The Defendants, citizens of the State of Washington, removed the action to this Court pursuant to 28 U.S.C. § 1332.

The Plaintiff then moved to remand the action, contending that the amount in controversy was less than $ 75,000. Specifically, it contends that the Defendants' Notice of Removal was impermissibly conclusory with regard to the amount in controversy, and that the actual value of the right to enter onto the land– the subject of the declaratory relief sought– has a value of only a few thousand dollars per year. In contrast, the Defendants allege that the amount in controversy exceeds $75,000. They argue that the measure of the amount in controversy arises from a contractual right of access to the mine the land in question that arises from a 1975 agreement between them and the Plaintiff's predecessor corporation. Although mining activities ceased after a time and the predecessor began reclamation activities, it continued to pay the Defendants $ 16,000 per year for the continued right to access the property. The Defendants contend that, adjusted for inflation, that $16,000 payment has a current value of approximately $ 50,000 per year, and that the reclamation requirements imposed on the Plaintiff may take up to 20 years, making the value of the case substantially larger than $ 75,000.

In the meantime, the Plaintiff learned that there may be additional parties holding interests in the land in question, including proposed Intervenor Glen Stinson, a citizen of Georgia, and certain agencies of the State of Colorado that hold interests under a Recreational Lease

Agreement. The Plaintiff moved to amend the Complaint to add these parties, noting in passing that doing so would destroy diversity jurisdiction due to the present of Colorado citizens on both sides of the litigation– the Plaintiff on one side and the State of Colorado and its agencies on the other.

The Court referred the Plaintiff's Motion to Amend to Magistrate Judge Shaffer. On April 4, 2005, Judge Shaffer issued a Recommendation **(# 43)** that found that a state entity is considered a non-citizen for purposes of diversity jurisdiction, and that the presence of such a non-citizen destroys diversity and requires a remand. *Citing, inter alia*, *Kansas v. Home Cable, Inc.*, 35 F.Supp.2d 783, 785 (D. Kan. 1998) *and Batton v. Georgia Gulf,* 261 F.Supp.2d 575, 582 (M.D. La. 2003). Because the finding of lack of diversity effectively required the dispositive remand of the action, Judge Shaffer issued his findings as a Recommendation pursuant to Fed. R. Civ. P. 72(b), recommending as well that the Motion to Remand and Motion to Intervene be denied as moot.

The Defendants filed timely Objections, alleging: (i) that Judge Shaffer erred in finding that the Plaintiff's discovery of additional owners was diligent, and that its subsequent request for leave to amend was therefore dilatory; (ii) that Judge Shaffer erred in finding that the proposed new Defendants are necessary parties, given that their interests in the property flow only from the presently-named Defendants and are of minor consequence; (iii) that Judge Shaffer misapprehended the Defendants' argument that the Plaintiff did not actually seek leave to amend

under Fed. R. Civ. P. 15, but rather, joinder under Fed. R. Civ. P. 19 and 20, and that in such a case, the supplemental jurisdiction provisions of 28 U.S.C. § 1367(b) are implicated; (iv) that Judge Shaffer erred in finding that the proposed amendment is not requested in bad faith, insofar as the Plaintiff's clear purpose of amendment is to destroy diversity jurisdiction; and (v) that Judge Shaffer erred in finding that the presence of a non-diverse non-citizen destroys diversity.

Shortly after filing their Objections, the Defendants terminated their Recreational Lease Agreement with the State of Colorado, and notified the Court of that fact. In response, the Plaintiff concedes that this effectively disposes of the issues relating to Judge Shaffer's Recommendation, but leaves undetermined the pending Motion to Remand and Motion to Intervene, as well as that portion of the Motion to Amend that involves the individuals claiming interest in the land.

## JURISDICTION

The Defendants invoke the Court's subject-matter jurisdiction under 28 U.S.C. § 1331.

## ANALYSIS

### A. Motion to remand on amount in controversy

The sole remaining issue is whether the amount in controversy exceeds $ 75,000, or whether this matter should be remanded to state court for lack of diversity jurisdiction. The Plaintiff seeks remand on the grounds that the amount in controversy does not exceed $ 75,000 as required by 28 U.S.C. § 1332(a).

The party invoking federal jurisdiction, here, the Defendants, bear the burden of establishing subject matter jurisdiction. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1289-90 (10th Cir. 2001). The 10th Circuit has been somewhat circumspect in articulating the precise burden of proof to be imposed, but it is clear that the Defendant must show that the amount in controversy exceeds $ 75,000 by at least a preponderance of the evidence. *Id.* Because federal court is of limited jurisdiction and this matter was commenced by the Plaintiff in state court, this Court does not indulge in a presumption that the amount in controversy is sufficient to confer jurisdiction, and the Court resolves uncertainties on that question in favor of remanding the case. *Id.*

In assessing the amount in controversy in a case such as this, the Court's task is to determine the monetary value of the right sought to be adjudicated; to do so, the Court looks to "the pecuniary effect an adverse declaration will have on either party to the lawsuit." *City of Moore v. Atchison, Topeka, & Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir.1983). Whether the amount in controversy is satisfied is determined by examining the Complaint, or if damages are not expressly quantified therein, by examining the Notice of Removal. *Martin*, 251 F.3d at 1290; *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961).

Here, the Complaint itself gives no clue as to the value of the right sought, but the exhibits attached to the Complaint begin to sketch an outline. According to the exhibits, in 1975, the Defendants predecessor entered into a lease with Empire Energy Corp. ("Empire"), the Plaintiff's

predecessor, to allow Empire to enter onto the land and mine for coal. Although the lease is not specific, the Complaint appears to allege that the entirety of the 638 acres owned by the Defendants' predecessor was encompassed by the lease. The lease required that Empire make an annual payment of $ 10,000 "for the right to backhaul coal through LESSOR'S land . . . whether or not EMPIRE exercises the right," and that Empire pay royalties per ton of coal, with a minimum royalty of $ 6,000 payable per year. In 1977, the lease was modified to provide that the tonnage royalties would be adjusted for inflation biennially, but did not purport to adjust the minimum royalty or the backhaulage fee. Thus, it would appear that the economic value of the bundle of rights leased by the Defendants' predecessor– access to the land, removal of coal, and backhaulage– was at least $ 16,000 per year. According to the Complaint, Empire ceased coal mining operations in 1995, and began undertaking statutorily-mandated reclamation activities.

The remaining exhibits to the Complaint reflect correspondence between counsel for the parties in 2004. A letter from the Plaintiff's counsel on July 27, 2004 proposes two alternatives. The first alternative drew its essence from the terms of the now-terminated lease. It proposed that the backhaulage fee would no longer apply, as the Plaintiff was no longer hauling coal, but that it would increase the minimum annual royalty payable for the land to $7,000. However, the proposal further considered that much of the land in question might be released from reclamation obligations upon application to state mining authorities by the Plaintiff, and that upon such a release, the royalty payment would fall to $1,000 per month, as only 10 of the 638 acres would

6

remain burdened. The second alternative proposed that the Plaintiff purchase a 35.5 acre tract of the property for $40,000, although this proposal would require the Defendants to continue to permit the Plaintiff to access the remaining 600+ acres of the property until those lands were released from reclamation obligations.

In an August 6, 2004 response, the Defendants' counsel indicated that both proposals were unacceptable, insofar as the Defendants desired a return on the property similar to that available under the lease, adjusted for inflation. They demanded an annual royalty of $50,000 (which was allegedly less than the $16,000 payable under the lease in 1975, adjusted to current dollars), which could be reduced by up to 50% if the Plaintiff succeeded in releasing much of the land from reclamation obligations. A few days later, the Plaintiff commenced this action in state court.

From these exhibits, the Court can deduce that the parties value the disputed right of entry at somewhere between $1,000 and $50,000 annually. What is <u>not</u> clear, however, is how long the parties expect this right of entry to be necessary. The Complaint alleges that reclamation obligations are expected to be minimal, but does not state when those obligations are expected to cease. The Notice of Removal is also silent on this point. Accordingly, nothing in the record before this Court allows the Court to make any determination as to whether the Plaintiff's reclamation obligations can be satisfied in a year, a decade, or longer. This uncertainty is significant, as even under the Defendants' view of the issue, the reclamation program must

extend over at least 1½ years (and twice that if state mining authorities were to promptly release the Plaintiff from its obligations as to much of the land, an event both parties appear to anticipate happening) for the value of the right of entry to exceed $ 75,000.  This failure of proof is critical to the Defendants, as they have the burden of proof on the sufficiency of federal jurisdiction and the Court is required to resolve doubts against exercising jurisdiction.

The Defendants argue that, due to the effect of C.R.S § 34-33-101 *et seq.,* the right of access at issue "may be required to burden [their] land for up to twenty years."  Even assuming that such a statutory provision-- for which no citation is offered-- exists, the Defendants' characterization of the duration is itself speculative.  Although it is possible that the right of access could persist for "up to twenty years," it is also possible that it could last for less, or indeed, much less.  Absent evidence in the Complaint or Notice of Removal that offers some basis to believe that the probable duration of the right of access would exceed one year, the Court cannot find that the Defendants have carried their burden of showing by a preponderance of the evidence that the amount in controversy exceeds $ 75,000.  Accordingly, the Motion to Remand is granted.

### B. Remaining matters

Because the Court lacks subject-matter jurisdiction over this action, it will not proceed to address the outstanding Motion to Amend and Motion to Intervene. Although the Defendants' Objections to Magistrate Judge Shaffer's Recommendation were effectively rendered moot by their termination of the Recreational Lease Agreement with the State of Colorado, the Court will, upon *de novo* review, Fed. R. Civ. P. 72(b), adopt that Recommendation on the alternative grounds discussed above.

## CONCLUSION

For the foregoing reasons, the Defendants' Objections **(# 45, 46, 47)** are **OVERRULED** as moot. The Court **ADOPTS** the Recommendation **(# 43)** of Magistrate Judge Shaffer, albeit on different reasoning. There being no federal diversity jurisdiction in this action, the Plaintiff's Motion for Remand **(# 10)** is **GRANTED**, and the case is remanded to the Colorado District Court for Moffat County for all further proceedings. The Plaintiff's Motion to Amend **(# 12)**, and the Motion to Intervene **(# 12)** are **DENIED** as moot as a result of remand. The Clerk of this Court shall transmit the entire case file to the Clerk of the Court for the Colorado District Court for Moffat County, and shall close this case.

Dated this 10th day of August, 2005.

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge